UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOHN W. EFFINGER, III,

        Plaintiff,                  Case No. 1:14-cv-423

v.                                        Honorable Robert Holmes Bell

R. VEST et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim and on grounds of immunity.

**Factual Allegations**

Plaintiff John W. Effinger, III, is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF). He sues the following MDOC employees: LCF Inspector R. Vest, LCF Hearing Investigator Tina Stepp, and MDOC Hearing Officer L. Maki.

According to the complaint, on August 24, 2012, while Plaintiff was incarcerated at LCF, he became ill and was transported to a local hospital due to a suspected overdose of Jimson Weed. Medical staff at the hospital performed a urinalysis, which tested positive for benzodiazepine. Plaintiff was then flown to another hospital and placed in a medically-induced coma to control his symptoms. Two days later, he was discharged from the hospital and he returned to LCF.

On August 28, 2012, he was interviewed by Inspector Vest, who later charged Plaintiff with a class I misconduct for "Substance Abuse (Other Substance)." (*See* Misconduct Report (8/28/2012), Ex. 3 to Compl., docket #1-1, Page ID#12.) According to Vest's report, Plaintiff admitted that he had intentionally eaten a leaf from a plant called Jimson Weed, and that he did so to "get 'high or get a buzz.'" (*Id.*) He did not realize that the leaf would have such a serious effect. He ate it and then went back to his unit, "feeling strange." (*Id.*) The next thing he remembered was waking up in the hospital. The misconduct report stated that Plaintiff should be held accountable for the medical expenses occurred, which exceeded $43,000.

Hearing Officer Maki held an initial hearing regarding the misconduct charge on September 14, 2012. The hearing was adjourned so that Defendant Stepp could provide more information. On September 21, 2012, Defendant Maki resumed the hearing and noted that Plaintiff claimed to have received benzodiazepine through an injection administered by prison medical staff.

The hearing was adjourned to investigate this assertion. The hearing resumed again on September 24, 2012, and Plaintiff was found guilty of the misconduct and ordered to pay restitution for the cost of his medical treatment.

In support of his guilty finding, Defendant Maki noted that Plaintiff tested positive for benzodiazepines, which he was not authorized to have. (Major Misconduct Hr'g Report (9/24/2012), docket #1-1, Page ID##13-15.) Though Plaintiff claimed to have been given a benzodiazepine injection by prison staff, an investigation revealed that he was given Haldol, which is not a benzodiazepine. Maki determined that it is "far from clear" whether there was a Jimson Weed plant at the prison facility or whether Plaintiff had ingested a leaf from such a plant, but it was clear that whatever he did to cause the reaction that he experienced was intentional, "as [Plaintiff] thought he would get a high." (*Id.* at Page ID#15.) Maki noted Inspector Vest's statement that Plaintiff told Vest that he ate a leaf in order to "get 'high or get a buzz.'" (*Id.*) Maki also noted a doctor's opinion that the ingestion of Jimson Weed would not cause a false positive for benzodiazepines, but Plaintiff's symptoms were consistent with ingestion of that plant, and "it was not uncommon for other inmates to provide a 'downer' for someone who is agitated or 'wound up.'" (*Id.*) Thus, whatever Plaintiff ingested (Jimson Weed or another substance), the presence of benzodiazepine in his system provided further evidence that his acts were intentional. (*Id.*)

In June 2013, Plaintiff requested a rehearing, asserting that he had discovered a hospital medical record showing that he had been given Ativan, a benzodiazepine, at the hospital where he was treated. The request for a rehearing was granted, but the only issue to be considered on rehearing was whether the misconduct hearing was timely or whether there was good cause to extend the 14-day time limit for a hearing. After finding that there was reasonable cause to delay

the misconduct hearing, a hearing officer upheld the conviction and sanctions. (*See* Class I Misconduct Hr'g Report – Rehearing (7/22/2013), Ex. 8 to Compl., docket #1-1, Page ID#17.)

Plaintiff claims that Defendants violated his right to due process under the Fifth and Fourteenth Amendments in the following ways: (1) Hearing Investigator Stepp failed to give the hearing officer the hospital medical record which showed that Plaintiff had been given a benzodiazepine at the hospital; (2) Inspector Vest hid and suppressed the foregoing hospital medical record from the hearing officer; and (3) Hearing Officer Maki refused to acknowledge the hospital medical record as evidence in Plaintiff's favor.[1]

**Discussion**

I.   Immunity

Defendant Maki is a hearing officer whose duties are set forth at MICH. COMP. LAWS §§ 791.251-791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230

---

[1] The Court notes that Plaintiff's allegations are somewhat contradictory. For instance, if Defendant Stepp did not provide the hospital record to the hearing officer, then Defendant Maki could not have been aware of it and did not intentionally refuse to acknowledge it. The Court construes the complaint as asserting alternative theories of liability. In other words, Plaintiff is claiming that at least one of the Defendants is responsible for the fact that the hospital record was not considered in his misconduct proceedings, though at this stage of the proceedings it is not clear who is actually liable.

(6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Defendant Maki's findings and decision regarding Plaintiff's misconduct conviction, including his alleged decision not to consider the medical report as evidence in Plaintiff's favor, were all actions taken within his capacity as a hearing officer. Consequently, he is immune from damages under § 1983.

Moreover, injunctive relief is not available under § 1983, because, under the 1996 amendments to that statute, injunctive relief "shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *accord Savoie v. Martin*, 673 F.3d 488, 496 (6th Cir. 2012). Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable. Consequently, any claim for injunctive relief is also barred. *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Thus, Maki will be dismissed on grounds of immunity and failure to state a claim.

      II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants Stepp and Vest deprived him of due process by withholding evidence that would have demonstrated Plaintiff's innocence. A prisoner's ability to challenge a prison misconduct proceeding on due process grounds depends on whether the resulting

conviction or punishment implicated a protected liberty or property interest. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court recognized that prisoners have a liberty interest in good-time credits, which affect a prisoner's release date, and prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of these credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in the loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits as a result of a misconduct conviction does not necessarily affect the duration of a prisoner's sentence. Instead, it merely affects parole eligibility, which remains discretionary

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest in disciplinary credits, Plaintiff has no due-process claim based on the loss of those credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to a prison misconduct conviction that results in a "restraint [of liberty] which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation of liberty arising from his misconduct conviction. The documents attached to the complaint indicate that, in addition to being ordered to pay restitution, Plaintiff lost privileges for 30 days. (*See* Class I Misconduct Hr'g Report - Rehearing, docket #1-1, Page ID#17.) The loss of privileges for 30 days is not an atypical and significant hardship. *See Sandin*, 515 U.S. at 486 (30 days in disciplinary segregation with limited privileges is not atypical and significant); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (fourteen-day loss of privileges did not impose an atypical, significant deprivation); *Dixon v. Morrison*, No. 1:13–cv–1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec.12, 2013) (fifteen-day loss of privileges

did not impose an atypical, significant deprivation implicating due process); *see also Wolff*, 418 U.S. at 571 n.19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). Thus, the misconduct conviction did not implicate a protected liberty interest.

Plaintiff might argue that his conviction and punishment implicated his property interests because he was ordered to pay restitution. However, a due process claim based on the deprivation of property would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

Plaintiff's claim is premised upon allegedly random and/or unauthorized acts of state officials. Plaintiff asserts that Defendants Stepp and Vest intentionally suppressed or negligently failed to provide the hospital medical record to the hearing officer. Accepting Plaintiff's allegations as true, the sanction entered against him was not the result of an "established state procedure"; instead, it was the result of actions by prison officials who failed to provide relevant evidence in their possession to the hearing officer. As the one bringing a substance-abuse charge based, in part, on the fact that Plaintiff's hospital records showed that he had benzodiazepine in his urine, Defendant Vest should have known that the hearing officer might find it relevant that the hospital records also

showed that the hospital staff injected Plaintiff with a benzodiazepine. Similarly, as the hearing investigator responsible for gathering the relevant evidence and documents for review by the hearing officer, *see* MDOC Policy Directive 03.03.105 ¶ U (Apr. 9, 2012), Defendant Stepp should have provided all the relevant hospital records to the hearing officer. Consequently, *Parratt* applies and Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985).

Plaintiff has not sustained his burden. He does not allege that post-deprivation remedies were inadequate to remedy the result of his misconduct proceedings. Indeed, after the denial of his motion for rehearing, he could have sought further review in the state circuit court by filing an application for leave to appeal within 60 days after denial of the rehearing. *See* Mich. Comp. Laws § 791.255(2). Apparently, Plaintiff did not do so. He cannot now complain that the state deprived him of due process when he failed to avail himself of the process available to him. Accordingly, his complaint will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim and on grounds of immunity, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

        This is a dismissal as described by 28 U.S.C. § 1915(g).

        A Judgment consistent with this Opinion will be entered.


Dated: July 15, 2014                              /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE